UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KEITH ROGERS** | * | **CIVIL ACTION NO. 17-0422**<br>Section P |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN KEVIN WYLES, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 34], Fed.R.Civ.P. 12(b)(6), filed by defendants, Warden Kevin Wyles, Butch Hatten, Teresa Corley, and Lt. Conner. For reasons stated below, it is recommended that the motion be GRANTED, and that plaintiff's claims against said defendants, plus Stacy Karderka, be DISMISSED, without prejudice.

## Procedural History

On March 17, 2017, Keith Rogers, an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("LDOC"), who, at the time suit was filed, was housed at the Caldwell Correctional Center ("CCC") and then later transferred to other facilities,[1] filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against various officers at the CCC because he was denied a religious vegetarian diet and did not receive appropriate medical care stemming from the denial of his vegetarian diet. [doc. #s 1 & 4]. In response to court order,

---

[1] Rogers currently is housed at the Jackson Parish Correctional Center.

Rogers amended his complaint, and added a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc *et seq*. [doc. # s 17-18]. He also explained that he had been transferred to Richland Parish Detention Center, then to LaSalle Correctional Center, and, on June 20, 2017, back to CCC.[2] [doc. # 18]. Plaintiff prayed for injunctive relief requiring defendants to provide him with a nutritionally adequate diet in compliance with his religious beliefs, an examination by an "outside" physician, or alternatively, a transfer to the Louisiana State Penitentiary at Angola. *Id*. He also requested "nominal" damages of $1,800, plus $5,000 in compensatory damages and $10,000 in punitive damages against each defendant. *Id*.

On September 1, 2017, the court completed its initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A, and ordered service on Kevin Wyles, Butch Hatten, Stacy Karderka, Teresa Corley, and Lt. Conner. (Sept. 1, 2017, Mem. Order [doc. # 22]). On October 19, 2017, summonses were returned "executed" as to all defendants, save for Stacy Karderka whose summons was returned "un-executed," with the notation that she no longer worked at CCC. [doc. #s 31-32].

On November 2, 2017, the four served defendants – Warden Kevin Wyles, Butch Hatten, Teresa Corley, and Lt. Conner – filed the instant motion to dismiss for failure to state a claim upon which relief can be granted on the grounds that plaintiff failed to exhaust administrative remedies prior to suit. In response to the motion, plaintiff filed a request for assistance of counsel because during his transfer from facility to facility, all of his legal materials were

---

[2] By August 2017, plaintiff had been transferred to Union Parish Detention Center. [doc. # 24]. In September 2017, prison officials transferred plaintiff to the Jackson Parish Detention Center. [doc. # 29].

confiscated or lost.

[doc. # 37].  Moreover, plaintiff filed a motion to compel defendants to provide him with all of his medical records, warden's unusual occurrence reports, and all documents pertinent to issues in the case.  [doc. # 40].  More recently, plaintiff filed a motion to supplement his complaint to add additional parties.  [doc.# 49].[3]  Plaintiff also submitted various letters, declarations, and discovery requests.  *See e.g.*, doc. #s 38-39, 43-46.

In short, after delays for briefing, the matter is now before the court.  *See* Notice of Motion Setting [doc. # 35].

## Analysis

I.   **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See*

---

[3] These motions are addressed via separate order.

3

*Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark, supra*.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

**II.**     **Law**

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). **An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement**. *Id*. (emphasis added). Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). Exhaustion also applies to claims under RLUIPA. *See Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 790 (5th Cir.2012), as corrected (Feb. 20, 2013). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th

Cir. 2003).

A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

The Supreme Court recently explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, ___ U.S. ___, 136 S.Ct. 1850, 1858 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[4]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to

---

[4] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

provide relief to aggrieved inmates. *Id*. (citation omitted).[5] Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[6]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the

---

[5] The Supreme Court provided some examples,
[s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
*Ross, supra* (internal citations omitted).

[6] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

**III.    Discussion**

Plaintiff consistently has maintained that he submitted a formal grievance regarding his diet on March 2, 2017. [doc. #s 1, 2, and 18, pg. 4]. In fact, he attached a copy of the grievance to his amended complaint. [doc. # 18, Exh. C-3].[7] The grievance form completed by plaintiff specified that "[t]he 'First Respondent' will respond to you within 15 days . . . If you do not hear from the 'First Respondent' within 20 days you may file a Request for a Warden's Review within the following 5 days . . ." *Id*.

However, plaintiff did not wait 20 days for processing of his initial grievance. Rather, by March 16, 2017, he had placed the instant complaint in the prison mail system. (Envelope [doc. # 1-2]. After he filed the instant suit, he requested a warden's review "around" April 10, 2017 – i.e., more than 25 days after he did not receive a response from the "First Respondent." [doc. # 18, pg. 4]. According to plaintiff, he received a response to his request for review stating that "D.O.C. doesn't honor vegetarian diets . . ." *Id*.[8]

In short, plaintiff's verified amended complaint, and the attachments thereto, confirm that

---

[7] On March 6, 2017, S. Karderka provided plaintiff with a copy of his grievance, showing that it was being processed. [doc. # 18, pg. 4].

[8] Plaintiff stated that he attached a copy of this response to the court with his complaint. *Id*. However, the court was unable to locate a copy of the document.

he was aware of the grievance process, but failed to exhaust available administrative remedies prior to filing suit. Even if he had exhausted the grievance process *after* filing suit, he failed to do so in compliance with deadlines specified in the process. Of course,

> [a]bsent a valid defense to the exhaustion requirement . . . the statutory requirement enacted by Congress that administrative remedies be exhausted before the filing of suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

*Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007).

Plaintiff did not directly respond to defendants' motion, and thus, did not specifically argue any of the recognized circumstances where an inmate's duty to exhaust administrative remedies may be excused. From plaintiff's submissions, however, he appears to intimate that defendants thwarted his attempts at redress by transferring him from facility to facility. In *Moussazadeh v. Texas Dep't of Criminal Justice*, the Fifth Circuit recognized an exception to exhaustion under similar circumstances. *See Moussazadeh, supra.* A critical distinction in *Moussazadeh*, however, is that plaintiff fully exhausted administrative remedies at his original facility *before* defendant(s) transferred him to another facility. *Id*. Here, plaintiff did not exhaust the grievance process initially. Moreover, defendants did not begin transferring plaintiff until after he had the opportunity to exhaust the grievance process.[9]

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure. Dismissal is the remedy, and it is

---

[9] Insofar as plaintiff contends that the grievance procedure was unavailable because officers consistently were unable or unwilling to provide relief to aggrieved inmates, he has not alleged *facts* to support a finding that officers *never* accorded relief.

typically without prejudice. *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. 2009) (modifying dismissal for failure to exhaust to reflect that it was without prejudice); *Johnson, supra* (complaint made clear that plaintiff failed to file his grievance timely, and thus, dismissal was warranted).[10]

### IV.  Stacy Karderka

Defendant Stacy Karderka did not join in the present motion – no doubt, at minimum, because Karderka never served. Nonetheless, Karderka is entitled to dismissal on the same basis as the moving defendants. *Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of a non-appearing co-defendant).[11]

### Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 34] filed by defendants, Warden Kevin Wyles, Butch Hatten, Teresa Corley, and Lt. Conner be GRANTED, and that plaintiff's claims against said defendants, plus Stacy Karderka, be DISMISSED, without prejudice. Fed.R.Civ.P. 12(b)(6).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[10] Administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules. *Woodford, supra*. At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies.

[11] The instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 19th day of March 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE